UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

VALENTINO LAHRON STEWART,

                    Petitioner,                         Case No. 1:20-cv-68

v.                                                      Honorable Robert J. Jonker

MATT MACAULEY,

                    Respondent.
_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.    Factual allegations

Petitioner Valentino Lahron Stewart is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Following a jury trial in the Ingham County Circuit Court, Petitioner was convicted of second-degree murder, Mich. Comp. Laws § 750.317, assault with intent to murder (AWIM), Mich. Comp. Laws § 750.83, carrying a concealed weapon (CCW), Mich. Comp. Laws § 750.227, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. On September 3, 2014, the court sentenced Petitioner to concurrent prison terms of 300 to 600 months on the murder conviction, 200 to 400 months on the AWIM conviction, and 24 to 60 months on the CCW conviction, to be served consecutively to a 2-year prison term for the felony-firearm conviction.

On January 21, 2020, Petitioner timely filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his application on January 21, 2020. (Pet., ECF No. 1, PageID.46.) The petition was received by the Court on January 27, 2020. For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The petition raises three grounds for relief, as follows:

    I.    PROSECUTORIAL MISCONDUCT DEPRIVED [PETITIONER] OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL.

    II.    THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT OF SECOND DEGREE MURDER.

III. DEFENDANT STEWART IS ENTITLED TO BE RESENTENCED BECAUSE HIS SENTENCE IS DISPROPORTIONATE AND THE COURT DID NOT CONSIDER THE MILLER/MONTGOMERY CASES IN DETERMINING THE SENTENCE FOR THIS JUVENILE OFFENDER.

(Pet., ECF No. 1, PageID.2, 6, 25, 30, 35.)

The facts underlying Petitioner's conviction, as taken from the Michigan Court of Appeals opinion, are as follows:

According to the evidence introduced at trial, on June 26, 2013, defendant participated in a shooting on North Pine Street in Lansing that resulted in the death of Anthony Kye. Kye's autopsy report showed that he had been shot three times, and that his wounds were consistent with those caused by a high-powered rifle. Although Kye lost his life in the shooting, it appears that he was not the intended victim. Rather, the shooters intended to kill someone known as "Fat Cat," who assaulted defendant several days prior to the shooting.

One of the principal witnesses at defendant's trial was Mark Williams, who lived with defendant and defendant's family, including defendant's brother, Jamon Hampton. Williams testified that on June 26, 2013, he agreed to defendant's request to drive defendant and Hampton to the store. Williams was new to the area, so Hampton provided directions; but it soon became clear that Hampton was not directing him to a store. During the drive, Williams heard Hampton ask defendant if "they were going to be doing this by their self [sic] or were we . . . meeting somebody over there." Hampton also asked defendant whether he had a "mag," and defendant responded that he had only three bullets. According to Williams, defendant owned a 9-millimeter pistol which he was carrying that night.

Williams testified that Hampton eventually directed him to a corner near the intersection of Lapeer and Pine streets. Williams offered Hampton the use of a firearm, which Williams had stored in the trunk of his car. In response, Hampton asked to use his AR-15 assault rifle, so Williams loaded the weapon and gave it to Hampton. Hampton and defendant then ran off into the night.

Williams and other witnesses testified that they heard repeated gunfire, and Williams testified that he recognized it as the sound of his assault rifle. Defendant and Hampton returned to Williams's car a few moments later, and he drove back to the apartment. Defendant called someone while they were driving, and told the person to avoid the north side of town because it was "hot," and to meet them at the apartment. When they returned to the apartment building, Jarvis Askew and Charles Mattox, who were friends of defendant and Hampton, were waiting in the parking lot. Mattox testified that defendant told them that he had seen Fat Cat and shot twice in the air. According to Williams, while they were discussing the shooting, they learned through phone calls that the "wrong person" had been killed.

> A jury convicted defendant of second-degree murder, assault with intent to commit murder, CCW, and felony firearm. The trial court sentenced defendant as noted above. Defendant now appeals as of right.

*People v. Stewart (Stewart I)*, No. 323969, 2016 WL 683117, at *1-2 (Mich. Ct. App. Feb. 18, 2016). The court of appeals' summary is consistent with the evidence outlined in Petitioner's habeas application, though Petitioner's application contains additional details. (ECF No. 1, PageID.7-23.)

After hearing the evidence, the jury acquitted Petitioner of first-degree murder, but convicted him of second-degree murder, AWIM, CCW, and felony firearm. Petitioner appealed his convictions and sentences to the Michigan Court of Appeals, raising the same three issues he presents in his habeas petition, together with a claim raised in his pro per supplemental brief on appeal concerning the failure to give a voluntary-manslaughter instruction and a supplemental sentencing issue under *People v. Lockridge*, 870 N.W.2d 502. The court of appeals affirmed the convictions, but remanded the case to the trial court to determine whether the court's sentence based on judge-found facts would have been different if the guidelines were discretionary rather than mandatory and, if so, to resentence Petitioner. *Stewart I*, 2016 WL 682982, at *6-7.

Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same issues presented to the court of appeals. In an order issued on January 31, 2017, the supreme court denied leave to appeal.

On remand, the trial court concluded that it would have imposed the same sentence in the absence of the unconstitutional restraint on its discretion. Petitioner appealed the trial court's refusal to resentence him to the Michigan Court of Appeals. The court of appeals affirmed his sentence in an unpublished opinion issued on May 8, 2018. *People v. Stewart (Stewart II)*, No. 338726, 2018 WL 2121690 (Mich. Ct. App. May 8, 2018). Petitioner sought leave to appeal the

denial of resentencing to the Michigan Supreme Court. The supreme court denied leave to appeal on October 30, 2018.

## II.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 574 U.S. 1, 4 (2014); *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013); *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012); *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the

Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Ground I: Prosecutorial Misconduct

In his first ground for habeas relief, Petitioner contends that the prosecutor committed misconduct that deprived Petitioner of a fair trial. Specifically, he contends that the prosecutor impermissibly made reference in closing arguments to Petitioner being in a gang and to the incident arising out of gang-on-gang violence.

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

The Sixth Circuit "has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing argument." *Wilson v. Mitchell*, 250 F.3d 388, 398 (6th Cir. 2001). "The prosecution necessarily has wide latitude during closing argument to respond to the defense's strategies, evidence and arguments." *Wogenstahl v. Mitchell*, 668 F.3d 307, 329 (6th Cir. 2012) (quoting *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (internal quotation marks omitted)); *see also Clarke v. Warren*, 556 F. App'x 396, 408 (6th Cir. 2014).

Prosecutors also "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)).

In addressing Petitioner's claim, the Michigan Court of Appeals analyzed Petitioners prosecutorial-misconduct claim, as follows:

> On appeal, defendant first argues that the prosecutor committed misconduct during closing arguments when the prosecutor stated that defendant was a "member of a gang" and that the shooting had been undertaken in retaliation for the beating suffered by defendant. Defendant maintains that references to defendant's gang membership were unsupported by the evidence and that such remarks impermissibly urged the jury to convict defendant based on gang affiliation. Defendant asserts that the mention of gangs is inherently prejudicial and that, therefore, the prosecutor's remarks require reversal of his conviction. Defense counsel objected to the prosecutor's remarks at trial, thereby preserving this issue for appellate review. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). We review de novo preserved claims of prosecutorial misconduct to determine whether the defendant was denied a fair and impartial trial. *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). The prosecutor's comments are evaluated in light of "the relationship the comments bear to the evidence admitted at trial." *Id.* "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). They are permitted to argue the evidence and all reasonable inferences arising from the evidence as they relate to the prosecutor's theory of the case. *People v Lane*, 308 Mich App 38, 63; 862 NW2d 446 (2014). However, a prosecutor may not make a factual statement to the jury that is not supported by the evidence. *Dobek*, 274 Mich App at 66.

> In this case, during closing argument, the prosecutor discussed the motive for defendant's involvement with the shooting and he stated that the case was "just about a retaliation, a gang retaliation shooting" that defendant had taken part in "because he is a member of a gang who was beaten." Defense counsel objected, and argued that no evidence had been presented to support the prosecutor's characterization of defendant as a gang member. The trial court instructed the prosecutor to "move on." The prosecutor continued by characterizing the case as a story of "[r]etaliation between two warring groups," and stated that Mattox had referred to his friends, including defendant, Askew, Hampton, and Williams, as a "group" or "crew."

Contrary to defendant's arguments on appeal, the discussion of the motivation for the crime did not deprive defendant a fair trial and these statements by the prosecutor were reasonable inferences from the evidence presented at trial. For example, Mattox testified that defendant had been in a fight with "Fat Cat and his crew," a group that called themselves "STB" or "Shaking the Bag," which was a drug reference of some kind. In comparison, Mattox testified that his "group" or "crew" consisted of defendant, Askew, Hampton, and Williams. In response to the prosecutor's questioning, Mattox agreed that his "group" as well as Fat Cat's "crew" could be characterized as "groups of people who are in gangs or loose association with each other." Based on Mattox's testimony, the prosecutor's reference to defendant as a gang member was a reasonable inference. Similarly, the prosecutor's statement that the case was about gang "retaliation" was a reasonable inference based on Williams's testimony that defendant wanted revenge for his assault as well as testimony from Mattox that he and Askew were planning to "squash" Fat Cat and "[t]o settle the situation" on the night of the shooting. In sum, the prosecutor's comments during closing argument were based on the evidence presented at trial. Consequently, these remarks on the prosecutor's theory of the case relating to the motive for the shooting were not improper and defendant is not entitled to a new trial on this basis.

*Stewart I*, 2016 WL 683117, at \*2. Although the court of appeals did not cite to Supreme Court precedent in its analysis, it squarely applied the constitutional standard of whether the prosecutor's remarks deprived Petitioner of a "fair and impartial trial."

The factual findings of the court of appeals—summarizing the testimony about Petitioner's, and others', membership in a "crew" or "group"—are entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Sumner*, 449 U.S. at 546; *Smith*, 888 F.2d at 407 n.4. Petitioner bears the burden of overcoming that presumption by clear and convincing evidence. *Id.* Petitioner, however, does not contest any recited fact. Instead, he argues that the prosecutor's reference to these groups as "gangs" was so inherently prejudicial as to deprive Petitioner of due process. As a consequence, the Court accepts as true the facts relied upon by the court of appeals.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because

'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47 (quoting *Harrington*, 562 U.S. at 103).

Petitioner cannot meet this difficult standard. In *Coleman v. Jackson*, 566 U.S. 650 (2012), the Supreme Court provided guidance to courts "in determining what distinguishes a [prosecutor's] reasoned inference from 'mere speculation.'" *Id.* at 655. The Court described a reasonable inference as an inference that a rational jury could make from the facts. *Id.* at 656. In order to be reasonable, a prosecutor's inferences must rationally flow from the identified facts. An inference need not be compelled by those facts, it need only be rational. *Id.*

To succeed in his challenge, therefore, Petitioner must show that the inferences urged by the prosecutor were irrational. He has not made, and cannot make, that showing. The facts identified by the court of appeals, which are presumed to be correct, clearly and rationally support the prosecutor's inference in referring to the groups as "gangs."

Moreover, the Sixth Circuit has held that a prosecutor's reference to a defendant's gang affiliation is not inherently so inflammatory as to deny a defendant due process. In *Blackmon v. Booker*, 696 F.3d 536 (6th Cir. 2012), the Sixth Circuit reversed the Eastern District of Michigan's conclusion that a prosecutor's reference to an offender's gang affiliation rendered the petitioner's trial fundamentally unfair. *Id.* at 551-53. As the *Blackmon* court recognized, the Supreme Court has never held that the admission of evidence about gangs or a prosecutor's

reference to gang membership is inherently prejudicial. 696 F.3d at 553. Indeed, the court pointed out that "*no* Supreme Court decision that even remotely suggests an inferior federal court should resolve the constitutional questions here presented in Petitioner's favor—let alone on an evidentiary record comparable to the one before us." *Id.* (citing *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (holding that, in the absence of Supreme Court precedent, "it cannot be said that the state court unreasonably applied clearly established Federal law") (internal quotations omitted).

Here, as in *Blackmon*, given the high level of deference owed to the state court's resolution of the prosecutorial-misconduct claim, the court of appeals' decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Accordingly, Petitioner is not entitled to relief on his first habeas ground.

## IV.     Ground II:  Sufficiency of the Evidence

In his second ground for habeas relief, Petitioner argues that the prosecutor introduced insufficient evidence to find Petitioner guilty of second-degree murder.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific

reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals rejected Petitioner's sufficiency claim, as follows:

> Defendant argues that the prosecutor presented insufficient evidence to establish the elements of second-degree murder beyond a reasonable doubt because questions as to the identity of the shooters were not satisfactorily resolved and because Williams and Mattox were not credible witnesses.
>
> We review de novo a challenge to the sufficiency of the evidence. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "We examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *People v Ericksen*, 288 Mich App 192, 196; 793 NW2d 120 (2010). The elements of a crime may be established by circumstantial evidence and reasonable inferences from the evidence, and this Court will "not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013).
>
> In order to convict a defendant of second-degree murder, the prosecution must show that there was "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). In addition, "it is well settled that

identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008).

In this case, Williams testified to driving defendant and Hampton to the area where the shooting occurred. While they were driving, defendant pointed out the intended victim, stating "It's him. It's him." After Williams parked the car, defendant and Hampton ran into the night armed with guns, including the AR-15 carried by Hampton. The shooting followed shortly thereafter, and an autopsy later showed that Kye died as a result of gunshot wounds. In addition, defendant had a 9mm handgun in his possession that evening, 9mm shell casings were found at the scene, defendant told Mattox that he saw "Fat Cat" that evening and that he shot the 9mm handgun into the air, and defendant warned Askew via cell phone to avoid the area because they had "just shot it up." Defendant had a motive for the crime, insofar as he wanted revenge for the assault perpetrated by "Fat Cat;" and, when informed that the wrong victim had been killed, defendant stated that Kye "shouldn't have been there." While defendant challenges the credibility of the testimony presented and argues that other inferences could be drawn, it was the jury's responsibility to determine the witnesses' credibility and to decide the facts from the evidence presented. *See Dunigan*, 299 Mich App at 582. Viewing the evidence in a light most favorable to the prosecutor, there was sufficient evidence to establish defendant's identity as one of the shooters.

In contrast, defendant argues that the elements of the offense were not proven beyond a reasonable doubt because one of the prosecution's eyewitnesses described the suspect as a tall, slender man who wore dreadlocks while, in comparison, defendant was a large and not particularly tall person who did not wear dreadlocks in his short hair. Because the witness's description does not match defendant, defendant maintains there was insufficient evidence to establish his identity. Again, it was for the jury to weigh this evidence, and the significance of any inconsistency between this description and defendant's physical appearance was for the jury to resolve. See *id.* And, it is axiomatic that "a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). Moreover, we note that, contrary to defendant's argument, this was not the only eyewitness description of a suspect. Defendant does not address the testimony of another eyewitness, who observed that the suspect had short hair and was wearing brightly colored tennis shoes, which arguably corroborated Mattox's testimony that defendant was wearing red tennis shoes on the night of the shooting. Overall, viewing the evidence in a light most favorable to the prosecution, the evidence was sufficient to support defendant's conviction for second-degree murder.

*Stewart I*, 2016 WL 683117, at *3. Although the court of appeals did not cite federal cases, the

standard it applied was identical to that set forth in *Jackson*, 443 U.S. 307.

It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."). This Court therefore is bound by the elements set out in the court of appeals decision.

Petitioner fails to overcome the double deference owed to the court of appeals' determination that the evidence was sufficient to support all elements of the second-degree murder charge, including identity. Indeed, although Petitioner phrases his argument as one challenging the sufficiency of the evidence, his arguments are directed at the credibility of particular witnesses. He urges the Court to give strong weight to eyewitness Chotsie Bishop's description of the person she saw as to hairstyle, size, and accent, but to dismiss the testimony of Mark Williams and Charles Maddox as biased and inconsistent. As previously discussed, a habeas court may not consider witness credibility. *Herrera*, 506 U.S. at 401-02. Indeed, Petitioner's argument would turn the *Jackson* standard on its head—requiring the Court to consider the evidence in the light most favorable to Petitioner, rather than the prosecution.

Upon review, the Michigan Court of Appeals reasonably concluded that the evidence was sufficient to support the jury's finding of guilt on the second-degree-murder charge. Petitioner fails to demonstrate that the court of appeals' rejection of his sufficiency claim was either contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## V.    Ground III:  Sentencing Issues

In his final ground for relief, Petitioner raises several arguments about his sentencing. First, he contends that the sentencing court, on remand, improperly re-imposed its original sentence, without first mandating and considering an updated Pre-Sentence Investigation

Report (PSIR).  Second, he asserts that the trial court failed to consider the Eighth Amendment implications of *Miller v. Alabama*, 567 U.S. 460 (2012), when imposing his sentence.  Third, he contends that he is entitled to resentencing because his sentence violated the principal of proportionality.  Fourth, he contends that he was unconstitutionally sentenced under mandatory sentencing guidelines and that he is entitled to a new sentencing hearing.

### A.    Sentence scoring

In his direct appeal, Petitioner challenged the trial court's scoring of a number of offense variables under the Michigan sentencing guidelines.  Petitioner appears to have abandoned those particular challenges in his habeas petition.  He now argues that the trial court's imposition of the same sentence on remand reflected consideration of an erroneous PSIR, because the original PSIR did not contain the changes made by the court during the sentencing hearing.

To the extent that Petitioner wishes to assert that the trial court mis-scored the sentencing variables Petitioner raised on direct appeal, he fails to state a constitutional claim.  Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law).  There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v.*

*Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

The trial court, on remand, held that a resentencing hearing was unnecessary, because it would have imposed the same sentence if the guidelines were discretionary, rather than mandatory. Petitioner argues that the court re-imposed a sentence based on inaccurate information, because it did not obtain a new PSIR and relied on the original PSIR, which did not contain the changes made by the trial court at the original sentencing hearing.

Petitioner's argument rests on a false assumption. At the original sentencing hearing, the trial court agreed with certain sentencing arguments raised by Petitioner, which reduced Petitioner's total offense-variable score from the PSIR-recommended 161 points to 115 points. In addition, the court agreed to Petitioner's request to add information to the PSIR about Petitioner's work after leaving high school. Petitioner thereafter was sentenced based on the grid created by the new offense-variable score of 115 points and upon the PSIR, as updated at the sentencing hearing. At the time of the remand, the trial court had before it both the original PSIR (with any annotations it may have made) and the transcript of the sentencing hearing at which it made changes to the PSIR. Petitioner therefore fails to demonstrate either that the information before the court was false or that the court relied on that false information. *Tucker*, 404 U.S. at 447.

Further, the only issue on remand was whether the mandatory nature of the guidelines caused any prejudice to Petitioner. Under the terms of the remand, only if the trial court concluded that it would have made a different determination if the guidelines were discretionary was Petitioner entitled to a new sentencing proceeding. And only then would the a new PSIR have been potentially relevant. *See Stewart I*, 2016 WL 683117, at *7. Because the trial court concluded that it would have reached the same result if the guidelines were discretionary, it did not need to review an updated PSIR.

**B.      Application of mandatory sentencing guidelines**

Petitioner contends that his sentence was unconstitutionally imposed under the Michigan sentencing guidelines at a time they were mandatory. He asserts that he therefore was entitled to a new sentencing hearing.

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury and his Fourteenth Amendment right to due process, by using, to enhance his sentence,

17

facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Subsequently, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original). The Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id.* at 520-21 (relying on *Booker,* 543 U.S. at 264-265 (holding that

the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018). The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Id.* at 714. The court reasoned that, "[]a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences. *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

Application of *Alleyne*, however, does not alter the result in the instant case. The Supreme Court has recognized that not every case in which the defendant was sentenced under mandatory guidelines requires resentencing. Instead, as the Court indicated in *Booker*, 543 U.S. at 268, determining whether resentencing is warranted may depend, among other things, "upon application of the harmless-error doctrine." *Id.* Here, the Michigan Court of Appeals remanded the case to the trial court to determine whether the mandatory nature of the sentencing guidelines at the time of Petitioner's sentence was harmless. The circuit court expressly held that it would have imposed the same sentence, even if the guidelines were advisory at the time of the original sentencing hearing.

As the courts have recognized, purely advisory applications of the guidelines do not run afoul of the Sixth Amendment. *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion

in imposing a sentence within a statutory range."); *see also Apprendi,* 530 U.S. at 481-82 (reiterating that "'a sentence imposed by a federal district judge, *if within statutory limits,* is generally not subject to review'") (emphasis added) (quoting *Tucker*, 404 U.S. 443 at 447); *see also Reign v. Gidley*, 929 F.3d 777, 781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts.") Because the trial court held that it would have imposed the same sentence regardless of the guidelines, Petitioner cannot demonstrate that he was prejudiced by the mandatory nature of the guidelines at the time he was sentenced.

As a consequence, the trial court's denial of a resentencing hearing and the court of appeals' affirmance of that denial are neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

## C. Proportionality, reasonableness, and *Miller*

In his next two attacks on the trial court's sentencing decisions, Petitioner argues that his sentence was disproportionate and that the trial court failed to consider the Eighth Amendment implications of the fact that he was a juvenile, ostensibly in violation of *Miller*, 567 U.S. 460. Petitioner also argues that his sentence was unreasonable under *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017)

Petitioner argued in the state courts that his sentence of 300 to 600 months on the murder conviction was disproportionate to his offense in light of all of the mitigating circumstances. Petitioner principally claimed that his sentence was disproportionate under the analysis enunciated by the Michigan Supreme Court in *People v. Milbourn*, 461 N.W.2d 1 (Mich. 1990), and unreasonable under *Steanhouse*, 902 N.W.2d at 335. Petitioner also argued that the sentence violated the Eighth Amendment, particularly in light of *Miller*, 567 U.S. 460.

To the extent Petitioner argues that his sentence was disproportionate under *People v. Milbourn*, 461 N.W.2d. 1 (Mich. 1990), or unreasonable under *People v. Steanhouse*, 902 N.W.2d 327 (Mich. 2017), he fails to raise a cognizable habeas claim. In *Milbourn*, the Michigan Supreme Court held that a sentencing court must exercise its discretion within the bounds of Michigan's legislatively prescribed sentence range and pursuant to the intent of Michigan's legislative scheme of dispensing punishment according to the nature of the offense and the background of the offender. *Milbourn*, 461 N.W.2d at 9-10; *People v. Babcock*, 666 N.W.2d 231, 236 (Mich. 2003). Nearly three decades later, in *Steanhouse*, Michigan Supreme Court held that a sentencing court's departure from the sentencing guidelines is unreasonable if the court abused its discretion. *Steanhouse*, 902 N.W.2d at 335. The proper test for determining whether the sentencing court abused its discretion, it held, is found in *Milbourn*'s proportionality analysis. *Id.* In other words, a sentence departing from the guidelines is unreasonable if it is disproportionate. Clarifying its holding, the *Steanhouse* court expressly rejected adopting factors used by the federal courts. *Id.*

It is plain that *Milbourn*, and thus *Steanhouse*, were decided under state, not federal, principles. *See Lunsford v. Hofbauer*, No. 94-2128, 1995 WL 236677, at * 2 (6th Cir. Apr. 21, 1995); *Atkins v. Overton*, 843 F. Supp. 258, 260 (E.D. Mich. 1994). As previously discussed, a federal court may grant habeas relief solely on the basis of federal law and has no power to intervene on the basis of a perceived error of state law. *See Wilson*, 562 U.S. at 5; *Bradshaw*, 546 U.S. at 76; *Pulley*, 465 U.S. at 41. Thus, Petitioner's claim based on *Milbourn* and *Steanhouse* is not cognizable in a habeas corpus action.

With respect to Petitioner's Eighth Amendment claim, the United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin*

*v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).

Petitioner was not sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Petitioner's sentence therefore does not present the extraordinary case that runs afoul of the Eighth Amendment's ban on cruel and unusual punishment.

Moreover, the *Miller* decision does not alter that calculus. In *Miller*, 567 U.S. 460, the Supreme Court held that the Eighth Amendment prohibits a sentencing scheme that mandates life in prison without parole for juvenile offenders, concluding that such a scheme creates an unreasonable possibility of a disproportionate sentence. *Id.* at 479. The Court reiterated its prior recognition that "children are constitutionally different from adults for sentencing purposes." *Id.* at 471. The Court highlighted children "'lack of maturity,'" "'underdeveloped sense of responsibility,'" "'vulnerab[ity] . . . to negative influences and outside pressures,'" and that they

"lack the ability to extricate themselves from horrific, crime-producing settings." *Id.* (quoting *Roper*[*v. Simmons*], 543 U.S. [551,] 569 [(2005)] (holding that a person under 18 at the time of the crime may not be executed)). In addition, the *Miller* Court repeated that, "because a child's character is not as 'well formed' as an adult's, his traits are 'less fixed' and his actions are less likely to be 'evidence of irretrievabl[e] deprav[ity].'" *Id.* (quoting *Roper*, 543 U.S. at 570). The Court therefore instructed that, before sentencing a person who was a juvenile at the time of the offense to life imprisonment without parole, the sentencing court must consider "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. Subsequently, in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), the Supreme Court held that *Miller* announced a new substantive constitutional rule that was retroactive on state collateral review. *Id.* at 735-36.

Although a court may conclude that the considerations raised in *Miller* are relevant to a court's discretionary imposition of a lesser sentence on a juvenile, *Miller* does not mandate those considerations and does not clearly establish that the Eighth Amendment bars a sentence of 300 to 600 months' imprisonment on a juvenile who was 16 at the time of the offense. Both before and after *Miller*, proportionality review under the Eighth Amendment is limited to cases involving a sentence of death or life imprisonment without parole.

As a consequence, the state court's disposition of Petitioner's habeas argument was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

## VI.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:    April 7, 2020          /s/ Robert J. Jonker
                              ROBERT J. JONKER
                              CHIEF UNITED STATES DISTRICT JUDGE